UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMMY LEE MORTON,

     Plaintiff,

v.                                                                                              Hon. Paul L. Maloney

MUSKEGON COUNTY FRIEND                                        Case No. 1:26-cv-1763
OF THE COURT, et al.,

     Defendants.

## REPORT AND RECOMMENDATION

Plaintiff Jammy Lee Morton filed his pro se complaint in this action on June 3, 2026, against the Muskegon County Friend of the Court (FOC), Muskegon County Family Court Judge Jenny L. McNeil, and Muskegon County Circuit Court Child Support Specialist Rebecca Katzenbach, alleging claims pursuant to 42 U.S.C. § 1983. For relief, Morton seeks compensatory and punitive damages against Judge McNeil, the FOC, and Katzenbach. (ECF No. 1 at PageID.9.)

Having granted Morton's motion to proceed as a pauper (ECF No. 4), I have conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Having conducted this initial review, I recommend that the action be dismissed because Morton's claims against Judge McNeill are barred by absolute judicial immunity; his claims against the FOC in this Court are barred by the Eleventh Amendment; Defendant Katzenbach is entitled to quasi-judicial immunity, and Morton's claims against Katzenbach are barred by the three-year statute of limitations applicable to Section 1983 claims; and the Court lacks jurisdiction over the entire matter under the *Rooker-Feldman* doctrine.

Morton was incarcerated with the Michigan Department of Corrections (MDOC) from May 7, 1998, through June 23, 2021. (*Id.* at PageID.3.) In 1997, Morton and his then-wife divorced, and his wife was awarded custody of their minor daughter. (ECF No. 1-1 at PageID.34–44.) On November 13, 1998, the court entered an order awarding sole custody of the minor child to Morton's ex-wife because Morton was in prison for eight-to-twenty-five years for sexually abusing the minor child. (ECF No. 1 at PagID.4.; ECF No. 1-1 at PageID.53–54.) Morton alleges that on June 22, 2005, Katzenbach committed fraud on the court when she advised Muskegon County Circuit Court Judge William S. Marietti that Morton had been incarcerated on March 8, 2005, and would be unable to pay his child support obligations, and Judge Marietti issued an order incorporating this information and holding Morton's child support obligations in abeyance pending his release from prison. (ECF No. 1 at PageID.4; ECF No. 1-1 at PageID.56–57.)

Morton alleges that upon his release from the MDOC, collection of his child support obligations resumed and his Veterans Disability Benefits were garnished. (ECF No. 1 at PageID.5.) In addition, he alleges that he was held at an airport in the Philippines for two weeks and removed from the country due to his child support arrearages. (*Id.* at PageID.8.) On July 22, 2024, Morton filed a motion in the Muskegon County Circuit Court to have his child support arrearages discharged due to fraud, and the FOC filed a response. On August 26, 2024, Judge McNeill entered an order denying the motion as contrary to Mich. Comp. Laws § 552.603. (ECF No. 1-1 at PageID.71–72.)

Morton's claims should be dismissed for the following reasons.

First, according to Morton's allegations, Judge McNeill's only act was ruling on Morton's motion to discharge his child support arrearage. It is well established that a judge is absolutely immune from suits seeking monetary relief, so long as the judge was performing judicial functions.

2

*See Mireles v. Waco*, 502 U.S. 9, 9–10 (1991). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Id.* at 11. A judge is not immune (1) where the judge's alleged actions were not taken in the judge's judicial capacity, or (2) where the actions, although judicial in nature, were taken in the complete absence of jurisdiction. *Id.* at 11–12. "[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of h[er] authority; rather, [s]he will be subject to liability only when [s]he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). "Whether an act is judicial depends on the nature and function of the act, not the act itself." *Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997) (internal quotation marks omitted) (quoting *Mireles*, 502 U.S. at 13). The analysis involves two considerations: "(1) looking to the nature of the act itself, whether the act is a 'function normally performed by a judge' and (2) regarding the expectations of the parties, whether the parties 'dealt with the judge in h[er] judicial capacity.'" *Id.* (quoting *Mireles*, 502 U.S. at 12). Here, Judge McNeill was clearly acting in her capacity as a judge and well within her jurisdiction when she denied Morton's motion. Thus, Judge McNeil is entitled to immunity from Morton's claims.

Next, regardless of the form of relief requested, the States and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332,

3

341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Because the FOC is a part of the Muskegon County Circuit Court, *see* Mich. Comp. Laws § 552.503(1) (creating the office of Friend of the Court in each judicial circuit), and Michigan courts are arms of the State of Michigan entitled to Eleventh Amendment immunity, *see Pucci v. 19th District Court*, 628 F.3d 752, 760–74 (6th Cir. 2010), the FOC is entitled to immunity. *See Johnson v. Wayne Cnty.*, No. 13-14331, 2013 WL 5854441, at *2 (E.D. Mich. Oct. 30, 2013) ("Eleventh Amendment immunity bars suits against arms of the state, such as the Michigan courts and, therefore, the Friend of the Court."); *Merritt v. Lauderbach*, No. 12-13645, 2013 WL 1148410, at *5 (E.D. Mich. Mar. 19, 2013) (concluding that Eleventh Amendment immunity shielded the Midland County Friend of the Court from the plaintiff's action). Therefore, Morton's action against the FOC is barred in this Court by the Eleventh Amendment.

As for Defendant Katzenbach, her only role as an employee of the Muskegon County Circuit Court was making recommendations to the court. "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir. 1989)); *see also Nowicki v. Bruff*, No. 95–2233, 1996 WL 694141 (6th Cir. Dec. 3, 1996) (friend-of-the-court employees entitled to quasi-judicial immunity from suit for money damages) (citing *Bush*, 38 F.3d at 847). In determining whether an individual is entitled to quasi-judicial immunity, courts employ a "functional" approach, looking "to the nature of the function performed, not the identity of the actor who performed it." *Id.* (citations and internal quotation marks omitted). Whether an act is judicial in nature does not depend on whether it is discretionary. *Foster v. Walsh*, 864 F.2d 416,

417 (6th Cir. 1988). Instead, the relevant inquiry is whether the acts taken by court personnel were "basic and integral part[s] of the judicial process," unless those acts were done in the clear absence of all subject matter jurisdiction. *Mullis v. U.S. Bankruptcy Court, Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987). Here, Defendant Katzenbach's act of making recommendations to the court was an integral part of the judicial process. Thus, she is immune from suit.

Apart from immunity, Morton's claims against Katzenbach—based on her actions in 2005—are time-barred. State statutes of limitations and tolling principles apply to determine the timeliness of claims raised in lawsuits brought pursuant to Section 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). Section 1983 civil rights actions are governed by the state statute of limitations for personal injury actions. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). For such actions in Michigan, the statute of limitations is three years. Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam). Accrual of the claims for relief is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis for the action. *Collyer*, 98 F.3d at 220. Here, any claim against Katzenbach accrued at the time Judge Marietti entered the July 24, 2005 Order based on Katzenbach's recommendation, which Morton alleges caused his injury.

The Court also lacks jurisdiction over this action to the extent the harm Morton alleges arises from orders issued by the Muskegon County Circuit Court. The *Rooker-Feldman* doctrine has its roots in the Supreme Court's decisions in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and provides that lower federal courts are without authority to review final judgments of state courts in judicial proceedings. This is because "only the Supreme Court of the United States has the jurisdiction to

5

review state court decisions." *Coleman v. Governor of Mich.*, 413 F. App'x 866, 870 (6th Cir. 2011) (citing *Rooker*, 263 U.S. at 416); *see also Givens v. Homecomings Fin.*, 278 F. App'x 607, 608–09 (6th Cir. 2008). The Supreme Court has clarified the scope of the doctrine, confining it to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In light of *Exxon Mobil*, the Sixth Circuit "distinguishe[s] between plaintiffs who bring an impermissible attack on a state court judgment—situations in which *Rooker-Feldman* applies— and plaintiffs who assert independent claims before the district court—situations in which *Rooker-Feldman* does not apply." *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 309 (6th Cir. 2010).

Morton's complaint falls into the former group of cases: an impermissible attack on a state-court judgment. Morton complains of injury arising from both Judge Marietti's July 24, 2005 order and Judge McNeill's August 26, 2024 order and essentially asks this Court to grant him relief from those orders. (ECF No. 1 at PageID.4–6) In short, Morton is asking this Court to act as an appellate court to review the state court's orders. However, it is well established that there is no federal jurisdiction when, as here, "the claim is 'a specific grievance that the law was invalidly—even unconstitutionally—applied in the plaintiff's particular case.'" *Loriz v. Connaughton*, 233 F. App'x 469, 474 (6th Cir. 2007) (quoting *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 937 (6th Cir. 2002)). Morton's challenges to the orders are properly brought, not in this Court, but in the Michigan Court of Appeals.

## CONCLUSION

For the foregoing reasons, I recommend that Morton's complaint be **dismissed**.

The Court must also decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Good faith is judged objectively, *Coppedge v. United States*, 369 U.S. 438, 445 (1962), and an appeal is not taken in good faith if the issue presented is frivolous, defined as lacking an arguable basis either in fact or law. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). For the same reasons that I recommend dismissal of the action, I discern no good faith basis for an appeal and recommend that, should Morton appeal this decision, the Court assess the $605.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610-11.

Date:  June 12, 2026

/s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).